FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 08, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TARA ROBISON, | No. 1:17-CV-3030-JTR |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 12, 13. Attorney D. James Tree represents Tara Robison (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 5. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in February 2013, alleging disability since March 31, 2012, due to mold exposure related illness; severe and chronic fatigue; gastrointestinal problems; severe sinusitis; multiple system issues; shortness of breath; chronic nausea; chronic stomach and body pain; thyroid was removed; and unable to sit or stand for long periods (fatigue related). Tr. 200, 207, 229. Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Virginia M. Robinson held a hearing on August 6, 2015, Tr. 45-95, and issued an unfavorable decision on August 12, 2015, Tr. 25-37. The Appeals Council denied review on December 13, 2016. Tr. 1-6. The ALJ's August 2015 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on February 14, 2017.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on August 7, 1979, and was 32 years old on the alleged onset date, March 31, 2012. Tr. 207. She completed college in 2005 and thereafter worked as an elementary school teacher. Tr. 240. Plaintiff testified at the administrative hearing that she last worked in a co-teaching position from August/September 2013 to April 2014. Tr. 55-56. Her disability report indicates she stopped working in 2012 because of her condition(s). Tr. 229. Plaintiff testified she believed she was no longer able to work because she has a lot of physical limitations. Tr. 59-61.

Plaintiff stated she has constant exhaustion/chronic fatigue as a result of mold exposure. Tr. 62. She also indicated she has memory issues or brain fog, stomach pain, a chronically infected lingual tonsil, severe back pain, and an inability to sleep from the mold exposure. Tr. 62-63. She stated that an August 2013 car accident exacerbated her symptoms, Tr. 63, 71-72, and she has needed to go to a chiropractor twice a week, every week, since the accident, Tr. 87-88.

Plaintiff testified that in the previous six months, her best week resulted in only two hours of energy for the week; the rest of the time she was not able to be on her feet. Tr. 64. She indicated if she attempts to push herself to do more, it results in her being bedridden. Tr. 64. However, she further testified that during

the last month, she had been healthier with close to two hours of energy each day. Tr. 65. She stated that, consistent with her pattern, she believed something would likely happen (i.e. exposure to a germ or her lingual tonsil would fare up) and she would then be ill for the next six, eight or 12 months. Tr. 65.

With regard to her lingual tonsils, Plaintiff described the issue as an ongoing ears, nose and throat infection. Tr. 68. She indicated Dr. Gross told her it is an issue she will battle for the rest of her life. Tr. 68. Plaintiff reported that when she has an episode related to her lingual tonsils, it causes severe fatigue and results in her being bedridden for a few days and then having flulike symptoms for several weeks or months. Tr. 69.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision

supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On August 12, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, March 31, 2012. Tr. 27.

At step two, the ALJ determined Plaintiff had the following severe impairments: chronic fatigue syndrome, recurring sinusitis, and hypothyroidism. Tr. 27. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 28.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined she could perform a range of light exertion level work with the following additional limitations:  she can lift or carry up to twenty pounds occasionally and up to ten pounds frequently; she can stand/walk or sit for approximately six hours in an eight-hour workday with normal breaks; she must avoid moderate exposure to extreme cold, extreme heat, pulmonary irritants such as fumes and gases, and workplace hazards such as dangerous machinery or working at unprotected heights; and she must avoid exposure to toxic molds.  Tr. 28.

At step four, the ALJ concluded Plaintiff was capable of performing her past relevant work as an elementary school teacher as actually and generally performed. Tr. 35.  Alternatively, at step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of telephone information clerk, document preparer, escort vehicle driver, and assembler.  Tr. 35-37.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from March 31, 2012, the alleged disability onset date, through the date of the ALJ's decision, August 12, 2015.  Tr. 36-37.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) improperly weighing the medical opinion evidence of record; (2) improperly discounting the statements of 14 lay witnesses; (3) failing to find Plaintiff's lingual tonsillitis was a medically-determinable, severe impairment; and (4) failing to provide legally sufficient reasons for discrediting Plaintiff's symptom testimony.

# DISCUSSION

## A. Step Two

Plaintiff asserts the ALJ erred by failing to find her chronic lingual tonsillitis was a medically-determinable, severe impairment. ECF No. 12 at 16-18.

Plaintiff bears the burden of proving she has a severe impairment at step two of the sequential evaluation process. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows she has a severe impairment. 20 C.F.R. § 416.912(a). The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities. An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. "Basic work activities" are defined as the abilities and aptitudes necessary to do most jobs. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b).

Step two is "a de minimis screening device [utilized] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically determinable severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence," S.S.R. 85-28; *see Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005). Applying the normal standard of review to the requirements of step two, the Court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Plaintiff did not have a medically severe impairment. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."); *Webb*, 433 F.3d at 687.

In this case, the ALJ concluded that Plaintiff has the severe impairments of chronic fatigue syndrome, recurring sinusitis, and hypothyroidism. Tr. 27. The

ALJ evaluated the evidence of record and concluded that Plaintiff did not have a medically determinable severe impairment related to issues with her lingual tonsils. Tr. 27-28.

It is significant to note at the outset that while Plaintiff described recurring issues with her lingual tonsils at the administrative hearing, Tr. 68-70, Plaintiff's disability report identifies 10 different medical conditions, including chronic fatigue, sinusitis and a thyroid issue, impairments the ALJ found were severe, but fails to mention lingual tonsillitis as a condition that limited her ability to work, Tr. 229. In any event, although the record reflects Plaintiff experienced lingual tonsillitis, *see e.g.* Tr. 390-391 (December 13, 2011, pre-onset date medical report), on October 21, 2014, Plaintiff's treating physician, Rick Gross, M.D., indicated Plaintiff had a tonsillectomy in 2007, recommended against current surgical intervention, and opined there were many other overlying factors surrounding her symptomatology that surgery would not help. Tr. 613. On April 28, 2015, Dr. Gross explained to Plaintiff that her lingual tonsils had completely regressed and were not likely to be the cause of her symptoms. Tr. 1065; *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (an individual shall only be considered disabled if she has an impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months).

Plaintiff did not met her burden at step two to show that any issue she had with her lingual tonsils significantly limited her ability to perform basic work activities. Accordingly, the ALJ did not err by failing to identify lingual tonsillitis as a medically-determinable, severe impairment in this case.

**B.     Plaintiff's Symptom Testimony**

Plaintiff additionally contends the ALJ erred by failing to provide valid reasons for finding her not fully credible in this case. ECF No. 12 at 18-20.

///

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. Tr. 29.

### 1. Inconsistencies

The ALJ described a number of inconsistencies in Plaintiff's statements. Tr. 29-31. In assessing the weight accorded to a claimant's statements, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When a claimant fails to be a reliable historian, "this lack of candor carries over" to other portions of her testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The first inconsistent statement noted by the ALJ was Plaintiff's May 2013 claim of extreme fatigue after working three afternoons a week during the 2010-2011 school year, Tr. 428, versus her January 2011 claim of fatigue related solely to antibiotics, Tr. 402. Tr. 29. Contrary to Plaintiff's assertion, ECF No. 12 at 18, the ALJ does not base this inconsistency on a failure to mention mold exposure in the January 2011 report. Although mold on the exterior walls of Plaintiff's

classroom was discovered in the summer of 2011, Tr. 428, the inconsistency noted by the ALJ concerns the fact that the fatigue claimed in January 2011 was alleged to be caused by antibiotics "without mention of work related stress or fatigue," Tr. 29.  Nevertheless, Plaintiff has consistently alleged fatigue during the relevant time period in this case, and the Court finds that giving two different reasons for feeling fatigued on two different dates is not *per se* inconsistent.  Accordingly, the first inconsistent statement noted by the ALJ is not compelling.  However, the Court finds the error harmless.  *See Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding adverse credibility finding where ALJ provided four reasons to discredit claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

The next inconsistent statement noted by the ALJ was with respect to Plaintiff's initial testimony that she did not undergo the recommended pulmonary function test because she was told it would cost between $10,000 and $20,000, Tr. 50-51, compared to her subsequent testimony that she had been approved for "charity care" and did not consider whether the pulmonary function test would be covered as a result, Tr. 51.  Tr. 30.  The administrative hearing evidence supports the ALJ's interpretation that Plaintiff's testimony in this regard was inconsistent.

The ALJ's third inconsistent statement:  Plaintiff's testimony that Harborview did not advise her whether she was able to work, Tr. 58, versus Harborview medical records from May 2013 which document the opinion that Plaintiff was able to perform sedentary work, Tr. 431, is also supported by the evidence of record.  Tr. 30.

The ALJ next determined Plaintiff's August 2013 statement to her nutritionist, Richard Forish, that she had great fatigue after taking vitamin

supplements that resulted in her needing to take a long nap, Tr. 381, contrasted with Plaintiff's allegations that she sleeps through much of the day, every day, Tr. 67-68. It was not error for the ALJ to find this instance of Plaintiff alleging vitamins, not an underlying impairment, caused her fatigue as an inconsistency.

The ALJ also indicated that although Plaintiff testified that in the previous six months her best week resulted in a total of only two hours of energy for the week and the rest of the time she was not able to be on her feet, Tr. 64, this testimony conflicted with her testimony describing her ability to drive to her chiropractor appointments twice a week, have treatment, and drive home, Tr. 87-88, 93-94 (Plaintiff testified the roundtrip drive to the chiropractor would take her a total of 40 to 50 minutes, she would spend on average 20 to 30 minutes in the waiting room of the chiropractor, and the treatment would last about 10 minutes), as well as her appearance during physical examinations noted in the record. Tr. 31. Again, the ALJ's interpretation of the record that Plaintiff's testimony was inconsistent in this regard is supported by the evidence of record.

Finally, the ALJ noted Plaintiff's inconsistent reports of her limitations. Tr. 31. The ALJ noted that despite Plaintiff's testimony which depicted severely limiting symptoms, she reported in June 2014 that the prior year, on a really good day, she was able to walk one to two miles at a time, Tr. 596, and, in July 2014, she indicated she was able to be on her feet for four to six hours straight and perform light chores and light walking, Tr. 598. Tr. 31. These inconsistencies are likewise supported by the record.

With the exception of the ALJ's determination that Plaintiff's assertions of fatigue were inconsistent, it was entirely proper for the ALJ to note the foregoing inconsistencies in finding Plaintiff's subjective complaints less than fully credible.

### 2. Objective Medical Evidence

The ALJ also found that the objective medical evidence of record did not substantiate Plaintiff's allegations of disabling limitations. Tr. 29-30.

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991); *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (in determining credibility, the ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

As noted by the ALJ, Plaintiff was evaluated by Stanley Kimball, DO, an occupational medicine specialist, on May 22, 2013. Tr. 29, 428-432. Dr. Kimball indicated the causative nature of Plaintiff's symptoms was "not clear," and advised Plaintiff to obtain a pulmonary function test in order to assess the presence of any undiagnosed asthma, which may be the cause for her respiratory complaints and fatigue. Tr. 29-30, 431. Plaintiff was also advised to contact the school to determine if there was exposure documents surrounding the time of remediation or at the time of the HVAC cleaning. Tr. 30, 431. There is no such exposure documentation of record, and, as discussed above, Plaintiff did not follow up with obtaining a pulmonary function test. Tr. 30.

As indicated by the ALJ, Dr. Kimball observed that Plaintiff presented as pleasant and cooperative, in no apparent distress, and without any significant physical examination findings. Tr. 31, 430-431. He observed Plaintiff demonstrated normal respiratory patterns without any appearance of being winded during the examination; noted Plaintiff had normal gait, normal range of motion, normal strength in her extremities, and normal grip strength; and noted a normal chest examination. Tr. 31, 430-431. The report concluded Plaintiff would be able to perform a sedentary type job, but she should avoid exposure to molds. Tr. 30, 431.

William Drenguis, M.D., examined Plaintiff on June 19, 2013. Tr. 355-358. Dr. Drenguis noted that Plaintiff demonstrated only very minimal findings during

the physical examination and had normal coordination and gait, normal range of motion, normal strength in her extremities, and normal grip strength.  Tr. 31, 357.

On August 13, 2013, Plaintiff's treating naturopath, John Sherman, N.D., wrote that Plaintiff had been a patient at his clinic since 2011 and had "gradually improved her health to a point she will be able to return to work as of 8/26/13." Tr. 361.

Treating physician Gross routinely indicated Plaintiff only demonstrated minimal findings on exam and determined in December 2014 that Plaintiff's "over-the-top malaise" was of unknown etiology.  Tr. 30, 31, 610, 611-612, 614-615, 617-618, 1036-1037.

As determined by the ALJ, the objective medical evidence of record does not support the disabling symptoms and limitations alleged by Plaintiff in this case. It was proper for the ALJ to conclude Plaintiff was not entirely credible because Plaintiff's alleged level of limitation was not consistent with the medical evidence which reflects Plaintiff's impairments did not cause completely disabling functional limitations.

### 3.    Effectiveness of Treatment

The ALJ also indicated that Plaintiff reported an improvement of her symptoms during the relevant time period.  Tr. 30, 31.

An ALJ may rely on the effectiveness of treatment to find a plaintiff's testimony unpersuasive.  *See e.g. Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ may properly rely on a report that a plaintiff's mental symptoms improved with the use of medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (noting impairments that are controlled by treatment cannot be considered disabling).

The ALJ noted Plaintiff testified she felt the supplements provided by her nutritionist, Mr. Forish, were bringing about significant improvement in her symptoms and that she preferred to pursue that form of treatment as opposed to the

medical care suggested by Harborview physicians.  Tr. 30, 50-52.  As stated by the ALJ, Plaintiff worked with Mr. Forish continuously for two years and consistently reported an improvement of her symptoms.  Tr. 31.  For example, Mr. Sherman reported on August 13, 2013, that Plaintiff's treatments from Mr. Forish had been "very beneficial" and that Plaintiff felt "almost 90-100% better over the last four weeks."  Tr. 362.  Plaintiff indicated she had started the treatment with Mr. Forish in March of 2013, she felt better within a month, and her improved health persisted for the last five months.  Tr. 362.  She stated she "feels quite good."  Tr. 362.

It was proper for the ALJ to note the effectiveness of Plaintiff's treatment in alleviating her symptoms as a relevant factor in considering the credibility of Plaintiff's subjective complaints.

### 4.     Embellishment of Condition

The ALJ further noted there was evidence of record that Plaintiff embellished her symptoms.  Tr. 30.  An ALJ's decision to discredit a claimant's statements may be supported by the claimant's tendency to exaggerate.  *Tonapetyan*, 242 F.3d at 1148.

The ALJ indicated Dr. Gross described Plaintiff's reports of fatigue as "over-the-top malaise of unknown etiology," Tr. 610, Plaintiff indicated in July 2014 that she had chronic fatigue syndrome "due to neurotoxin," Tr. 546, but the record reflects the causation of her symptoms had not been established, Tr. 431, and Plaintiff acknowledged at the administrative hearing that some of her statements regarding her medical condition were based on her own personal opinion, Tr. 62-63.  Tr. 30.

The ALJ did not error by finding Plaintiff's embellishment of symptoms relevant to her credibility determination.

### 5.     Motivation

The ALJ additionally mentioned the record reflected Plaintiff lacked motivation to work, which negatively affected her credibility in this case.  Tr. 31.

The Ninth Circuit has recognized that the ALJ may properly consider the issue of motivation in assessing credibility. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

The ALJ indicated that because Plaintiff requested a job share in order to work half-time long before her exposure to mold, Tr. 327, it suggested Plaintiff lacked motivation. Tr. 31. The record cited by the ALJ, a lay witness statement by Plaintiff's former principal, noted the job-share position as a positive example of Plaintiff's work attributes. Tr. 327. Furthermore, there is other evidence of record which reflects Plaintiff had a strong work ethic. Tr. 314, 320-321, 327. In any event, the Court finds the ALJ's reasoning in this instance, that Plaintiff's request for a job-share position implies she lacked motivation to work, is not convincing.[1]

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing

---

[1]Given the ALJ's other supported reasons for finding Plaintiff less than credible, the Court finds this error harmless. *See Carmickle*, 533 F.3d at 1163 (upholding adverse credibility finding where ALJ provided four reasons to discredit claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's allegations were not entirely credible in this case.

**C. Lay Witness Statements**

Plaintiff contends the ALJ further erred by improperly discounting the statements of 14 lay witnesses. ECF No. 12 at 13-16.

The ALJ shall "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague*, 812 F.2d at 1232, citing 20 C.F.R. § 404.1513(e)(2). "Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague*, 812 F.2d at 1232. The ALJ may not ignore or improperly reject the probative testimony of a lay witness without giving reasons that are germane to each witness. *Dodrill*, 12 F.3d at 919.

The ALJ indicated the testimony of Plaintiff's husband was not persuasive because it was inconsistent with the minimal and mild physical examination findings, the lack of objective evidence and Plaintiff's inconsistent statements; the ALJ found the statement of Plaintiff's parents unpersuasive because it was inconsistent with the minimal and mild physical examination findings, the lack of objective evidence and Plaintiff's inconsistent statements; and the ALJ gave limited weight to "the letters submitted by Plaintiff's family, friends, former coworkers and pastors" because they were inconsistent with the observations of Plaintiff's health care providers and the minimal and mild physical examination findings, there was a lack of objective evidence to support the letters, and the opinions were contrary to Plaintiff's reported activities. Tr. 32.

The Court finds the ALJ properly addressed the numerous lay witnesses of record, Tr. 32, and provided germane reasons for discounting their statements.

///

///

**D.    Medical Source Opinions**

Plaintiff contends that the ALJ erred by failing to accord proper weight to the opinions of certain medical sources of record.  ECF No. 12 at 3-13.  Plaintiff specifically argues the ALJ erred by discounting the opinions of Rick Gross, M.D., Richard Wilkinson, M.D., William Drenguis, M.D., chiropractor James Martin, D.C., Naturopath John Sherman, N.D., and certified nutritional consultant Richard Forish.  *Id.*

In this case, the ALJ found that although Plaintiff had severe impairments (chronic fatigue syndrome, recurring sinusitis, and hypothyroidism), the medical evidence did not support the degree of limitation alleged by Plaintiff.  Instead, the ALJ determined Plaintiff retained the RFC to perform a range of light exertion level work with the following additional limitations:  she can lift or carry up to twenty pounds occasionally and up to ten pounds frequently; she can stand/walk or sit for approximately six hours in an eight-hour workday with normal breaks; she must avoid moderate exposure to extreme cold, extreme heat, pulmonary irritants such as fumes and gases, and workplace hazards such as dangerous machinery or working at unprotected heights; and she must avoid exposure to toxic molds.  Tr. 28.  The Court finds the ALJ's interpretation of the medical evidence of record is supported by substantial evidence.  *See infra*.

**1.    Dr. Gross**

Plaintiff asserts the ALJ erred by according no weight to the disabled parking application form completed by Dr. Gross on December 22, 2014, that indicated Plaintiff was not able to walk 200 feet without stopping to rest, Tr. 621, and little weight to a "Medical Report" form filled out by Dr. Gross on February 23, 2015, which opined that Plaintiff needed to lie down during the day for two to four hours and would miss four or more days of work per month, Tr. 622-623. ECF No. 12 at 3-6.

///

If the opinion of a treating or examining physician is not contradicted, it can only be rejected with clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record.  *Andrews*, 53 F.3d at 1043.  Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding an examining physician's opinion.  *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-1464 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

Here, the foregoing opinions of Dr. Gross were contradicted by other medical sources, including a state agency reviewing physician[2] and examining physician Dr. Kimball;[3] therefore, the ALJ needed to only provide specific and legitimate reasons for rejecting Dr. Gross' opinions expressed on the forms.

---

[2]State agency consultant, Charles Wolfe, M.D., indicated Plaintiff was capable of performing all work, but must avoid even moderate exposure to extreme heat and cold, pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation, and hazards such as machinery and heights.  Tr. 124-125.  The ALJ accorded this state agency assessment significant weight.  Tr. 33.

[3]Dr. Kimball observed that Plaintiff presented as pleasant and cooperative, in no apparent distress, and without any significant physical examination findings.  Tr. 31, 430-431.  Dr. Kimball indicated Plaintiff demonstrated normal respiratory patterns without any appearance of being winded during the examination; noted Plaintiff had normal gait, normal range of motion, normal strength in her extremities, and normal grip strength; and noted a normal chest examination.  Tr. 31, 430-431.  The report concluded Plaintiff would be able to perform a sedentary

As indicated by the ALJ, inconsistent with the extreme findings on the forms, Dr. Gross routinely indicated Plaintiff demonstrated only minimal findings on examination and determined in December 2014 that Plaintiff's "over-the-top malaise" was of unknown etiology.  Tr. 30, 31, 34, 610, 611-612, 614-615, 617-618, 1036-1037.  The ALJ further noted that the opinions on the forms did not describe any basis or support, such as clinical findings, for the assessed extreme limitations.  Tr. 34; *see Tonapetyan*, 242 F.3d at 1149 (an ALJ may discredit a treating physician's opinion that is unsupported by rationale or treatment notes and offers no objective medical findings to support the existence of alleged conditions).  The extreme limitations are also inconsistent with Plaintiff's report in June 2014 that the prior year, on a really good day, she was able to walk one to two miles at a time, Tr. 596, and, in July 2014, that she was able to be on her feet for four to six hours straight and perform light chores and light walking, Tr. 598.  Tr. 31.  Finally, the ALJ found that because Dr. Gross only referenced Plaintiff's reported symptoms and did not include any clinical findings, it suggested Dr. Gross relied heavily on Plaintiff's subjective statements, which, as discussed above, were appropriately found not entirely credible.  *See Tonapetyan*, 242 F.3d at 1149 (9th Cir. 2001) (a physician's opinion premised primarily on a claimant's subjective complaints may be discounted where the record supports the ALJ's discounting of the claimant's credibility); *Morgan,* 169 F.3d at 602 (the opinion of a physician premised to a large extent on a claimant's own account of symptoms and limitations may be disregarded where they have been properly discounted).

Based on the foregoing, the Court finds that the ALJ provided specific, legitimate reasons that are supported by substantial evidence for according little weight to the disabled parking application form completed by Dr. Gross on

_____

type job, but should avoid exposure to molds.  Tr. 30, 431.  The ALJ gave weight to the evaluation and opinion of Dr. Kimball.  Tr. 33.

December 22, 2014, Tr. 621, and the "Medical Report" form filled out by Dr. Gross on February 23, 2015, Tr. 622-623. Accordingly, the ALJ did not err with respect to his findings regarding Dr. Gross' form reports.

### 2. Richard Wilkinson, M.D.

Plaintiff contends the ALJ erred by giving no weight to the disabled parking application form completed by Dr. Wilkinson on July 10, 2015, that indicated Plaintiff was not able to walk 200 feet without stopping to rest, Tr. 1093, and little weight to a "Medical Report" form filled out by Dr. Wilkinson on July 13, 2015, which opined that Plaintiff needed to lie down much of the day due to exhaustion and would miss four or more days of work per month, Tr. 1097-1098. ECF No. 12 at 6-7.

Dr. Wilkinson's opinions were contradicted by state agency consultant Wolfe and examining physician Kimball; consequently, the ALJ needed to only provide specific and legitimate reasons for rejecting the foregoing opinions.

Like with Dr. Gross, the ALJ determined the extreme findings on the forms were inconsistent with Plaintiff's minimal and mild examination findings throughout the record. Tr. 34. The ALJ also noted that the opinions on the forms did not describe any basis or support for the assessed extreme limitations. Tr. 34; *see Tonapetyan*, 242 F.3d at 1149. Again, the extreme limitations contrast with Plaintiff's report in June 2014 that the prior year, on a really good day, that she was able to walk one to two miles at a time, Tr. 596, and, in July 2014, she was able to be on her feet for four to six hours straight and perform light chores and light walking, Tr. 598. Tr. 31. Finally, the ALJ found that because there was no support for the finding, it suggested Dr. Wilkinson relied heavily on Plaintiff's subjective statements. *See Tonapetyan*, 242 F.3d at 1149.

The Court finds the ALJ provided specific, legitimate reasons that are supported by substantial evidence for according little weight to Dr. Wilkinson's opinions expressed on the form reports.

### 3.     William Drenguis, M.D.

Plaintiff next contends the ALJ erred by accordingly "very little weight" to the June 19, 2013, opinion of consultative examiner William Drenguis, M.D.[4] ECF No. 12 at 7-9; Tr. 355-358.

The ALJ determined Dr. Drenguis' suggestion that Plaintiff was incapable of performing even a full range of sedentary work, Tr. 358, was internally inconsistent with his minimal examination findings.  Tr. 33.  Since a review of Dr. Drenguis' examination findings reveals Plaintiff had only very minimal findings during the physical examination and had normal coordination and gait, normal range of motion, normal strength in her extremities, and normal grip strength, this determination is fully supported.  Tr. 31, 357.

As with Dr. Gross and Dr. Wilkinson, the ALJ also properly determined Dr. Drenguis' assessment of limitations was inconsistent with Plaintiff's history of performance on examination; therefore, it was apparent Dr. Drenguis relied on Plaintiff's subjective statements, which were not entirely credible.  Tr. 33.  This was also a specific and legitimate reason to discount the assessed significant limitations.  *See supra*.

Finally, the ALJ noted Dr. Drenguis did not address the possibility that some of his clinical findings (*see* Tr. 358 noting Plaintiff doubled her pulse rate, increased her respiratory rate, and admitted to fatigue after the minimal activity of a range of motion exam) were simply a result of deconditioning.  Tr. 33.  With respect to this notation, the Court determines that even if these findings were the result of deconditioning, it would still be a physical limitation relevant to the

///

-------

[4]Like with Dr. Gross and Dr. Wilkinson, Dr. Drenguis' opinions were contradicted by Drs. Wolfe and Kimball.  The ALJ thus needed to only provide specific and legitimate reasons for rejecting Dr. Drenguis' opinions.

assessment of Plaintiff's overall condition. This was not a specific and legitimate reason to discount Dr. Drenguis' opinion.

Nevertheless, the Court concludes the ALJ properly evaluated the evidence of record and provided sufficient specific, legitimate reasons, supported by substantial evidence, for according very little weight to Dr. Drenguis' opinion assessing significant limitations.

### 4.    Chiropractor James Martin, D.C.

Plaintiff next contends the ALJ failed to provide germane reasons for according little weight to the treatment notes, records, and suggested limitations of chiropractor James Martin, D.C. ECF No. 12 at 9-11.

As a chiropractor, Mr. Martin's opinion is not the opinion of an acceptable medical source. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). The opinion of an acceptable medical source is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-971 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologist and therapists. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (2016). The ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232; however, "other source" opinions may be discounted with reasons germane to each source, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (cited cases omitted).

The ALJ noted Mr. Martin based his evaluations and assessments on Plaintiff's subjective statements, which were not entirely credible. Tr. 34, *citing* Tr. 1111 (stating Plaintiff had a very fragile and easily broken down immune system and had experienced torn muscles and ligaments, but did not identify any objective basis for such assertions). The ALJ further indicated Mr. Martin opined, without objective support, that Plaintiff was unable to be gainfully employed, Tr. 1111, but a determination of whether a claimant is "disabled" within the meaning

of the Social Security Act is reserved to the Commissioner.  *Hill v. Astrue*, 698 F.3d 1153, 1159-1160 (9th Cir. 2012); 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").  While the ALJ must still consider the medical source's opinion, here, the ALJ correctly determined Mr. Martin's letter simply concluded Plaintiff could not be gainfully employed, without describing any specific functional limitations.  Tr. 34.

The foregoing reasons provided by the ALJ for discounting Mr. Martin's opinions are germane and fully supported by the evidence of record.

### 5.    Naturopath John Sherman, N.D.

Plaintiff argues the ALJ erred by giving little weight to the statements of naturopath John Sherman, N.D.  ECF No. 12 at 11-12.

Naturopaths, like Mr. Sherman, are considered "other sources."  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).  As such, the ALJ may properly discount his opinions by providing germane reasons.  *Molina*, 674 F.3d at 1111.

The ALJ accorded "little weight" to Mr. Sherman's suggestion that Plaintiff needed to be off of work due to multiple conditions during the relevant period and had severe workplace limitations.  Tr. 33.  The ALJ found Mr. Sherman's opinions were inconsistent with the minimal and mild examination findings of record and that Mr. Sherman relied heavily on Plaintiff's subjective statements.  Tr. 33.

On August 13, 2013, Mr. Sherman indicated that Plaintiff's treatments from Mr. Forish had been "very beneficial" and that Plaintiff had felt "almost 90-100% better."  Tr. 362.  Plaintiff indicated she had started the treatment with Mr. Forish in March of 2013, she felt better within a month, and her improved health had persisted for the last five months.  Tr. 362.  Therefore, Mr. Sherman wrote a work release letter that indicated Plaintiff had "gradually improved her health to a point she will be able to return to work as of 8/26/13" without noting any additional work-related restrictions.  Tr. 361.  However, a separate letter drafted by Mr.

Sherman on the same date recommended Plaintiff be released to work, but that she start with limited hours, and gradually increase her work load over a full month, eventually working up to 24 hours weekly. Tr. 360. The record supports the ALJ's conclusion that Mr. Sherman drafted a work release letter to match Plaintiff's stated preference. Tr. 33, 362.

The ALJ further noted that Mr. Sherman's limitations assessed in a February 25, 2015 "Medical Report" form, Tr. 1020-1022, "parrot" the allegations of Plaintiff as viewed elsewhere in the record, Tr. 1025-1029 (description of sleep records and subjective pain levels). The ALJ found this demonstrated that Mr. Sherman relied on Plaintiff's non-credible subjective reports of symptoms. *See Morgan*, 169 F.3d at 602 (the opinion of a physician premised to a large extent on a claimant's own account of symptoms and limitations may be disregarded where they have been properly discounted).

The foregoing germane reasons provided by the ALJ for discounting Mr. Sherman's opinions are substantiated by the evidence of record.

### 6. Nutritional Consultant Richard Forish

Plaintiff additionally asserts the ALJ erred by according no weight to the notes, records and suggested limitations of Richard Forish. Mr. Forish, a certified nutritional consultant, is an "other source," and, as discussed above, "other source" opinions may be discounted with reasons germane to each source. *Molina*, 674 F.3d at 1111.

The ALJ accorded Mr. Forish's opinions no weight. Tr. 34. The ALJ indicated Mr. Forish never examined Plaintiff and only sold her supplements based on their email correspondence. Tr. 34. The ALJ thus found that Mr. Forish relied on Plaintiff's subjective statements, which were appropriately deemed not entirely credible by the ALJ. *See supra*. The ALJ additionally noted Mr. Forish's April 12, 2014, statement did not reference any objective findings. *See Tonapetyan*, 242 F.3d at 1149. Finally, the ALJ found Mr. Forish's opinions inconsistent with

Plaintiff's minimal and mild examination findings.  Tr. 34.  As indicated above, the objective medical evidence of record does not support the extensive limitations averred by Plaintiff in this case.  *Supra.*

The Court finds the ALJ provided germane reasons for assigning no weight to the opinions of Mr. Forish in this case.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), and this Court may not substitute its own judgment for that of the ALJ, 42 U.S.C. § 405(g).  Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, this Court's role is not to second-guess that decision.  *Fair*, 885 F.2d at 604.  Based on the foregoing, the Court finds the ALJ's interpretation of the medical record is supported by the weight of the evidence of record.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error.  Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED December 8, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE